UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------- X
ING BANK N.V.,

      Plaintiff,

v.

                                            Case No.

M/T CHRISOPIGI LADY,
IMO No. 9288681,                         **VERIFIED COMPLAINT**
her engines, tackle, equipment,
furniture, appurtenances, etc.,
*in rem*,

      Defendant.
------------------------------------------------- X

    NOW COMES, the Plaintiff, ING BANK N.V. ("ING") through undersigned counsel, and files this Verified Complaint against the defendant, the M/T CHRISOPIGI LADY, IMO 9288681, her engines, tackle, equipment, furniture, appurtenances, etc. ("the CHRISOPIGI LADY"), *in rem,* for damages and maritime arrest, upon information and belief, aver as follows:

## JURISDICTION

    1. This is an admiralty and maritime claim within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Admiralty Rule C"), and Federal Rules Civil Procedure 9(h).

    2. Venue is proper in this District in accordance with Admiralty Rule C as the CHRISOPIGI LADY is or will be within the physical jurisdiction of this Court upon its call at the Port of Bayonne, New Jersey, during the pendency of this action.

## PARTIES

    3. At all material times, ING was and is a banking and financial services corporation or

1

business entity organized and existing pursuant to the laws of The Netherlands, with a place of business being located in Amsterdam, The Netherlands. As more fully set forth herein, ING is an assignee of certain accounts, assets and maritime liens of O.W. Bunker (Switzerland) SA ("OW Bunker"), and therefore prosecutes this admiralty claim as the holder of OW Bunker's maritime lien against the CHRISOPIGI LADY as more fully set forth below.

4. At all material times, the CHRISOPIGI LADY was and is, upon information and belief, an ocean-going tanker ship, owned by Western Shipping Pte Ltd,("Western Shipping), and chartered by Koch Shipping, Inc. ("Koch Shipping").

5. In November, 2014, OW Bunk filed for protection pursuant to Chapter 11 of the United States Bankruptcy Code.

6. ING is the coordinator, agent, and security agent under that certain US$700,000,000.00 Mutlicurrency Revolving Borrowing Base Facilities Agreement, dated December 19, 2013 ("the Credit Agreement") and related guaranty, pledge, and security agreements, including that certain English Omnibus Security Agreement, dated December 13, 2013.

7. OW Bunker is a borrower and guarantor of the obligations owing under the Credit Agreement and is in default of those obligations.

8. OW Bunker is also a party to the Security Agreement, pursuant to which it absolutely assigned all of its rights, title and interest as of December 13, 2013, in certain assets, including customer accounts receivable for bunker deliveries, to ING.

9. Based on this assignment, OW Bunker has assigned to ING all of its rights, title and interests, including its right to institute this action and enforce its maritime liens against the CHRISOPIGI LADY, in the amounts owed to OW Bunker for bunker deliveries made to the

CHRISOPIGI LADY, as more fully described *infra*. For clarity, OW Bunker and ING will collectively be referred to as "OW Bunker" throughout the remainder of this pleading.

### Unpaid Bunkers Sold and Delivered to the CHRISOPIGI LADY

10. OW Bunker contracted to provide bunkers to the CHRISOPIGI LADY in the Port of Balboa, which bunkers were initially ordered by the charterer of the CHRISOPIGLI LADY. This contract to purchase bunkers is evidences by the Sales Confirmation, dated October 27, 2014, a true and accurate copy of which is attached as Exhibit A ("Sales Confirmation").

11. The Sales Confirmation, as well as the sale and delivery of the marine fuels to the CHRISOPIGLI LADY, were subject to the OW Bunker Group Terms and Conditions of sale for Marine Bunkers, Edition 2013, a true and accurate copy of which is attached as Exhibit B, hereafter "General Terms". More specifically, the Confirmation provided in relevant part, as follows:

> The sale and delivery of the marine fuels described above are subject to the OW Bunker Group's Terms and Conditions of sale(s) for Marine Bunkers. The acceptance of the marine bunkers by the vessel named above shall be deemed to constitute acceptance of said general terms to you as "Buyer" and to O.W. BUNKER & TRADING A/S as 'Seller'.
>
> The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http://owbunker.com/wp-conent/uploads/2013/12/OWB.ValidFrom01092013.pdf

(Exhibit A, Confirmation, page 2.)

12. Article B.1 of the General Terms defines the term "Buyer" to mean the vessel supplied and, jointly and severally her master, owners, managers/operators, disponent owners, time charterers, bareboat charterers, and charterers. (Ex. B, General Terms, page 2, art. B.1). As discussed *infra,* on or about November 4, 2014, the CHRISOPIGI LADY accepted bunkers from

3

OW Bunker, pursuant to the Confirmation. Accordingly, the CHRISOPIGILI LADY, her charterer Koch Shipping, and her registered owner, Western Shipping, fall within the definition of buyer and are, therefore, bound and obligated jointly and severally to the Confirmation and to the General Terms, which General Terms were incorporated in the Confirmation by express reference and adoption. *See One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 269 (5th Cir. 2011).

13. Article 1.3(iv) of the General Terms provides as follows:

> WHERE [the CHRISOPIGI LADY] fails to pay timely, [OW BUNKER] has the right to (without prejudice to its rights to receive default/delay compensation) take all appropriate steps to secure and enforce its claim. . .

(Exh. B, General Terms, Page 7, art. I.3).

14. Article I.9 of the General Terms provides as follows:

> Where Bunkers are supplied to [the CHRISOPIGI LADY], in addition to any other security, the Agreement is entered into and the Goods are supplied upon the faith and credit of [the CHRISOPIGI LADY]. It is agreed and acknowleged that the sale of the Bunkers to [the CHRISOPIGI LADY] and/or their acceptance on [the CHRISOPIGI LADY] create a maritime lien over [the CHRISOPIGI LADY] for the price of the Bunkers (and all interest and costs payable in respect thereof; including but not limited to the reasonable attorney's fees), such maritime lien afforded to [OW Bunker] over [the CHRISOPIGI LADY]. In any event any applicable Law shall not prejudice the right of the maritime lien of [OW Bunker] afforded hereunder or by any other applicable Law, be it of the place of delivery, the flag of the Vessel, or the place of jurisdiction and/or arrest of the Vessel, or otherwise howsoever.

(Ex. B, General Terms, p. 8, art. I.9).

15. Article P.5 of the General Terms provides as follows:

> The General Maritime Law of the United States shall always apply with respect to the existence of a maritime lien, regardless of the country in which [OW Bunkers] takes legal action. [OW Bunker] shall be entitled to assert its right of lien or attachment or other rights, whether in law, in equity or otherwise, in any jurisdiction where the Vessel may be found.

(Ex. B, General Terms, pages 11-12, art. P.5).

16. In filing this Verified Complaint, OW Bunker exercises its discretion to proceed against the CHRISOPIGI LADY under the substantive laws of the General Maritime Law of the United States of America as well as the Commercial Instrument and Maritime Lien Act, 46 U.S.C. § 31303 *et. seq.* and under the procedural laws of the Federal Rules of Civil Procedure, including the Supplemental Rules for Admiralty and Maritime Claims, as well as the Local Rules for the U.S. District Court for the Southern District of New York.

17. On October 27, 2014, OW Bunker issued the Confirmation for the account of the Master and/or Owner and/or Charterers and/or MV CHRISOPIGI LADY and/or Koch Shipping and indicated that it would provide 1.000.00-1.100.00 metric tons of fuel oil 380-CST 3.5 % to the CHRISOPIGI LADY in Balboa, with an estimated delivery date of October 5, 2014 and November 1, 2014. (Exh. A, Confirmation, page 1.)

18. On November 4, 2014, pursuant to the Confirmation and General Terms, the CHRISOPIGI LADY accepted a delivery of 1.049,915 metric tons of fuel oil 380-CST 3.5 % marine bunkers from OW Bunker. The bunker delivery was made on behalf of OW Bunker Panama, S.A., as evidenced by the Bunker Delivery Receipt, a true and correct copy of which is attached as Exhibit C.

19. On November 4, 2014, OW Bunker issued an invoice to the MV CHRISOPIGI LADY and/or Owners and/or Charterers, which was addressed to Koch Shipping, in the amount of $507,114.68, to be paid on or before December 4, 2014, a true and accurate copy of which is attached hereto as Exhibit D, hereinafter "Invoice". As of this date, neither ING nor OW Bunker have been paid for the bunkers delivered to the CHRISOPIGI LADY in breach of the

Confirmation and General Terms, and plaintiff is accordingly owed US $507,114.68 for the bunkers, fees and charges as aforesaid.

20. Pursuant to General Terms, Article 1.5, OW Bunker is entitled to recover contractual interest of three (3 %) percent per month on the foregoing unpaid invoice amount until paid, and a delayed payment administrative fee of US $1.50 per metric ton of bunkers supplied. (Exhibit B, General Terms, page 7, article 1.5).

21. Pursuant to General Terms, Article 1.7, all costs borne by OW Bunker in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with the breach of the contract shall be for the breaching party's sole account. (Id., Art. 1.7.) Accordingly, OW Bunker is additionally entitled to recover for all attorney's fees and costs incurred by OW Bunker resulting from its efforts to collect payment on the Invoice, and pursuant to the General Terms, the CHRISOPIGI LADY, Koch Shipping and Western Shipping remain jointly and severally liable for all amount due and owing to OW Bunker.

22. As of the date of this filing, ING is owed the following amounts for unpaid bunkers delivered to the CHRISOPIGI LADY:

|   |   |   |
|---|---|---|
| A. | Invoice: | $507,114.68 |
| B. | Accrued Interest: | $ 36,005.14 |
| C. | Administrative Fees: | $ 1,588.50 |
| D. | Accrued Attorney's Fees: | $ 25,000 |
| **TOTAL:** | | **$ 569,738.32** |

### REQUEST FOR ARREST OF THE CHRISOPIGI LADY
### PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE C

23. Upon information and belief, the CHRISOPIGI LADY is or will be within this

6

District during the pendency of this admiralty and maritime claim to recover for necessaries provided by OW Bunker to the CHRISOPIGI LADY.

24. Pursuant to Admiralty Rule C, OW Bunker is entitled to arrest the CHRISOPIGI LADY to satisfy OW Bunker's claims, including but not limited to pre-judgment interest, costs, expenses and attorney's fees.

25. OW Bunker agrees to release and hold harmless and indemnify the United States of America, the United States Marshal, their agents, servants, employees, and all others for whom they are responsible, for claims arising from the arrest of the aforesaid CHRISOPIGI LADY.

All and singular to the foregoing premises are true and correct within the admiralty jurisdiction of this Honorable Court.

WHEREFORE, plaintiff ING Bank N.V. prays:

1. That this Verified Complaint be deemed good and sufficient;

2. That due process form of law, according to the rules and practices of this Honorable Court, issue against the CHRISOPIGI LADY, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, either by way of arrest pursuant to Supplemental Admiralty Rule B, and that all persons claiming interest in said vessel be required to appear and to answer under oath, all and singular the matters aforesaid;

3. That after due proceedings are had, there by judgment entered in favor of plaintiffs, ING Bank N.V., and against defendant, CHRISOPIGI LADY, her engines, tackle, apparel, furniture, equipment, and all other necessaries, *in rem*, requiring defendant to pay damages to the plaintiff in the sum of **$ 569,738.32,** for bunkers delivered to the CHRISOPIGI LADY, and all other

damages as may be proven at trial, with prejudgment interest, attorney's fees, and all costs of these proceedings, and,

4. For all general and equitable relief to which this Honorable Court is competent to grant and plaintiff is otherwise entitled.

Dated: Red Bank, New Jersey
February 27, 2015

Respectfully submitted,

BETANCOURT, VAN HEMMEN, GRECO & KENYON LLC
Attorney for Plaintiff ING Bank N.V.

By: _____
Todd P. Kenyon (TK 7654)
Alton J. Evans, Jr. (AE 6565)
151 Bodman Place, Suite 200
Red Bank, New Jersey 07701
(732) 530-4646

LENNON, MURPHY & PHILLIPS, LLC
Attorney for Plaintiff ING BANK N.V.

By: _____
Patrick F. Lennon, Esq. *(Pro Hac Vice Pending)*
Anne C. LeVasseur, Esq. *(Pro Hac Vice Pending)*
Tide Mill Landing
2425 Post Road, Suite 302
Southport, CT 06890
(203) 256-8600

## ATTORNEY'S VERIFICATION

1. My name is Anne C. Levasseur

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Phillips, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: February 27, 2015

*Anne Levasseur*
Anne C. Levasseur